# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

**KENNETH W. KEETON,**

    **Plaintiff,**

    v.

**GBW RAILCAR SERVICES, LLC,**

    **Defendant.**

Case No. 2:18-CV-2106-JAR

## MEMORANDUM AND ORDER

Plaintiff Kenneth Keeton brings this action against Defendant GBW Railcar Services, LLC ("GBW"), alleging age discrimination in violation of the Age Discrimination in Employment Act ("ADEA").[1] Plaintiff asserts that he was terminated because of his age. Defendant asserts that Plaintiff was terminated pursuant to a Reduction in Force ("RIF") as he was less qualified and experienced than the two individuals who remained in the same position. This matter is before the Court on Defendant's Motion for Summary Judgment (Doc. 34). For the reasons stated in this opinion, the Court **grants** Defendant's motion.

**I.    Summary Judgment Standard**

Summary judgment is appropriate if the moving party demonstrates "that there is no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law."[2] In applying this standard, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[3] "There is no genuine [dispute] of material

---

[1] 29 U.S.C. § 621, *et seq.*

[2] Fed. R. Civ. P. 56(a).

[3] *City of Herriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010) (citing *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1210 (10th Cir. 2008)).

fact unless the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party."[4] A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[5] A dispute of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[6]

The moving party initially must show the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law.[7] In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial need not negate the nonmovant's claim; rather, the movant need simply point out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.[8]

Once the movant has met the initial burden of showing the absence of a genuine dispute of material fact, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[9] The nonmoving party may not simply rest upon its pleadings to satisfy its burden.[10] Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the

---

[4] *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986)).

[5] *Wright ex rel. Tr. Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[6] *Adler*, 144 F.3d at 670 (citing *Anderson*, 477 U.S. at 248).

[7] *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002), *cert. denied* 537 U.S. 816 (2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[8] *Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler*, 144 F.3d at 671); *see also Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010).

[9] *Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 324; *Spaulding*, 279 F.3d at 904 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

[10] *Anderson*, 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001).

nonmovant."[11] In setting forth these specific facts, the nonmovant must identify the facts "by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."[12] To successfully oppose summary judgment, the nonmovant must bring forward "more than a mere scintilla of evidence" in support of his position.[13] A nonmovant "cannot create a genuine issue of material fact with unsupported, conclusory allegations."[14] Finally, summary judgment is not a "disfavored procedural shortcut;" on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[15]

## II. Uncontroverted Facts

The following facts are either uncontroverted or viewed in the light most favorable to Plaintiff.

### A. Plaintiff's Work Experience

Watco Mechanical ("Watco") hired Plaintiff in September 2014 as a Performance Assurance Engineer. Soon after, and as previously planned, Watco and Greenbrier Companies ("Greenbrier") formed a joint venture known as GBW, and in January 2015, Plaintiff began working for GBW. GBW's business is specific to repairing railcars, and includes inspecting, maintaining, and repairing railcars to ensure compliance with federal regulations.

Prior to working for Watco, Plaintiff taught welding and metallurgy at Kansas City Metropolitan Community College ("Metropolitan") and Kansas City Community College. At

---

[11] *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 670–71); *see Kannady*, 590 F.3d at 1169.

[12] *Adler*, 144 F.3d at 671.

[13] *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir. 1993).

[14] *Tapia v. City of Albuquerque*, 170 F. App'x 529, 533 (10th Cir. 2006) (citing *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1237 (10th Cir. 2004)).

[15] *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

Metropolitan, Plaintiff trained railroad employees to obtain certification by the American Welding Society ("AWS") and taught welding and inspection techniques. Plaintiff helped develop the courses, which included information about railcars, tank cars, and flatbed cars. The AWS is "pretty much" the governing code for railcars in the railroad industry and applies to both railcars and tank cars, although these standards are not unique to railroads.[16]

Plaintiff began welding at 19 or 20 years old when he went to welding school through an organization called Manpower. In the late 1970s, Plaintiff worked for Pittman Manufacturing, where he welded lift trucks and conducted welding inspections in the oil and power technology industry. At some point in his career, Plaintiff was employed at Darby Company—a railcar construction company—where he welded and built railcars, and at some other point, he worked as a full-time welder for Cargill. Plaintiff has an extensive background in nondestructive testing of welds, and in total, has over 20 years of quality control experience in welding. He is also experienced in inspecting and certifying tank cars compliance with government regulations.[17]

Prior to working for GBW, Plaintiff had not worked for a railroad company, nor was he certified in the railcar standards promulgated by the Association of American Railroads. Before teaching at Metropolitan, Plaintiff had little training or experience specific to the railcar industry, with the exception of his work at Darby, a railcar construction company. Plaintiff testified that his only experience in tank cars before GBW was "just what little experience I had from college and teaching."[18]

---

[16] Doc. 35-1 at 34:19–23.
[17] Doc. 43-2 ¶¶15, 16.
[18] Doc. 35-1 at 124:7–13.

## B. Plaintiff's Work at GBW

Adrian Morgan hired Plaintiff at Watco. Plaintiff understood that Morgan wanted someone with an instructor background to focus on training personnel throughout Watco's shops. Plaintiff performed training throughout the country. Thereafter, Plaintiff was promoted to Regional Quality Assurance Manager, where he reported directly to Jennifer Burgett. Burgett supervised the Quality Assurance section, and Alan Keneipp supervised the Audit Assessment section.

As Regional Quality Assurance Manager, Plaintiff oversaw a territory that included repair shops primarily in Kansas, Wisconsin, Illinois, and Nebraska. He also continued to lead training activities and teach classes throughout the company, including outside his territory. As part of his duties, he traveled to repair facilities and worked with on-site Quality Assurance Managers to ensure their work and record-keeping complied with standards. Each repair facility had a local manager who reported to Plaintiff.

In October 2016, Plaintiff received an annual performance review from Burgett for his work completed between September 2015 and October 2016. Burgett delivered the evaluation personally to Plaintiff and discussed it with him in Kansas City. Burgett was then terminated around October 2016.

On October 19, 2016, Morgan wrote an email to management—including Keneipp—and human resources about Burgett's annual evaluations: "[Plaintiff] is more appropriately at a C level requiring improvement in multiple areas . . . Randy Courson's score is slightly lower than ideal as he is a consistent high performer."[19] In a follow-up email to Keneipp, Morgan wrote,

---

[19] Doc. 38-4 (sealed).

"we need to provide additional basis for ratings or consider alternative approach."[20] A few weeks later—at Morgan's direction—Keneipp completed new evaluations for the same time period for Plaintiff and Courson. In doing so, he reduced Plaintiff's scores in numerous areas, including his overall score from a "B" to a "C."[21] Simultaneously, he improved Courson's scores. Keneipp testified that the scores reflected his personal observations, including audit reports he had received, and that he relied on "a sheet that [he] was provided to evaluate and information that was contained without our Intelex system." [22] These metrics were never produced in discovery.

Keneipp asked Plaintiff to sign the new evaluation, but Plaintiff refused. Prior to giving Plaintiff the evaluation, Morgan had never "asked [Plaintiff] about or even spoken with [Plaintiff] regarding [his] performance."[23] Plaintiff was never told that his annual evaluation needed to be reviewed by higher management.[24] In the course of his management job, Plaintiff evaluated employees who reported to him, and he was never told to submit them to a higher-level supervisor before giving them to the employees. Burgett also testified she was never told that she needed to submit her evaluations to upper management prior to sharing them with employees.[25]

Around this same time, Plaintiff participated in management telephone conferences where the financial difficulties of the company were discussed. Burgett testified that prior to her termination, she "attended several management meetings in which management expressed that

---

[20] *Id.*

[21] *Compare* Doc. 35-2 *with* Doc. 35-3.

[22] Doc. 46 at 27:12–29:22.

[23] Doc. 43-2 ¶10.

[24] *Id.* ¶9

[25] Doc. 43-1 ¶4.

6

there were 'big changes coming' in the company structure and that we might expect in the near future, a number of employees will be offered the opportunity to seek employment elsewhere."[26]

A RIF was officially announced in early 2017. The RIF resulted from severe economic pressures faced by Defendant. The first round of cuts occurred in February 2017, and the second occurred in March 2017. At that time, Plaintiff was one of four Regional Quality Managers. The other three were Randy Courson, then age 50, Brad Porter, then age 39, and Mario Garcia, then age 58. On February 3, 2017, Morgan informed Plaintiff that he was being terminated. Porter was terminated in March 2017, and Courson and Garcia remained as Regional Quality Managers until GBW was terminated as a joint venture in 2018. Plaintiff was one of more than twenty-five individuals terminated through the RIF.

### C. Experience of the Other Regional Quality Managers

Courson had more than two decades of experience specific to the field of railcar repair. Plaintiff testified that Courson had "considerable railcar and tank car experience" and "more experience in railcars" than Plaintiff.[27] Courson also had significant experience in tank cars—an area Defendant considered essential to its future. Courson developed a tank car training course for Defendant, which Plaintiff himself took. In total, Courson had twenty-one years of experience in the railcar industry prior to working for Defendant: he spent eight years as a carman or inspector for Transico Rail and Trinity Rail and thirteen years at GATX Rail as a switchman and maintenance expert.

Garcia also had extensive experience in the field of railcar repair and had specialized knowledge of the maintenance and repair of tank cars. Garcia was employed in the railcar

---

[26] *Id.* ¶5.

[27] Docs. 43-2 ¶13, 35-1 at 100:21–101:2.

industry since 1979, with the exception of 1986 to 1990. Between 1979 and 1986 he worked for TTX Company, a railcar manufacturer, as a welder, repairman, railcar inspector, and supervisor. Garcia also worked for GATX, a tank cars and rail car manufacturer, as a railcar inspector, material/safety supervisor, finish supervisor, repair supervisor, quality assurance manager, production manager, and safety/quality coordinator for GATX field services.

Porter worked in the railcar repair industry for Defendant or its predecessors since 2005 and had over a decade of experience specific to the field of railcar maintenance and repair.

## III. Discussion

Plaintiff alleges one claim of age discrimination under the ADEA. The ADEA prohibits an employer from "discharg[ing] any individual or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."[28] The Supreme Court has held that the ADEA does not authorize mixed-motives age discrimination claims—"the ordinary meaning of the ADEA's requirement that an employer took an adverse action 'because of' age is that age was the 'reason' that the employer decided to act."[29] Thus, "[t]o establish a disparate treatment claim under the plain language of the ADEA . . . a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision."[30] However, the requirement that age must have been the but-for reason for the adverse employment action "does not disturb longstanding Tenth Circuit precedent by placing a heightened evidentiary requirement on ADEA plaintiffs to prove that age was the

---

[28] 29 U.S.C. § 623(a)(1).

[29] *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009) (citing *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993)).

[30] *Id.* at 177 (citing *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 652–55 (2008); *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 63–64 (2007)).

sole cause of the adverse employment action," nor does it "preclude [the] continued application of *McDonnell Douglas* to ADEA claims."[31]

Under the ADEA, the plaintiff bears the ultimate burden of proving his employer intentionally discriminated against him,[32] but may do so "through either direct evidence or circumstantial evidence that creates an inference of intentional discrimination."[33] Where the plaintiff "seeks to use circumstantial evidence to show [his] employer's discriminatory intent, [the court] employ[s] the three-step burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*."[34] Plaintiff does not present direct evidence of discrimination here. Accordingly, the Court applies the *McDonnell Douglas* burden-shifting scheme.[35]

Under the *McDonnell Douglas* framework, the plaintiff bears the initial burden of establishing a prima facie case of age discrimination.[36] This burden is "not onerous."[37] If the plaintiff meets his burden of establishing a prima facie case, the burden then shifts to the defendant employer to set forth a legitimate, non-discriminatory reason for its actions.[38] Finally, if the defendant employer offers a legitimate, non-discriminatory reason for its actions, the plaintiff must then show that the reason stated by the employer is mere pretext for discrimination.[39] "[A] plaintiff's prima facie case, combined with sufficient evidence to find that

---

[31] *Locke v. Grady Cty.*, 437 F. App'x 626, 629 (10th Cir. 2011) (quoting *Jones v. Okla. City Pub. Schs.*, 617 F.3d 1273, 1278 (10th Cir. 2010)).

[32] *Bennett v. Windstream Comm'ns, Inc.*, 792 F.3d 1261, 1266 (10th Cir. 2015) (citing *Riser v. QEP Energy*, 776 F.3d 1191, 1199 (10th Cir. 2015); *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008)).

[33] *Id*. (citing *Riser*, 776 F.3d at 1199).

[34] *Id.* (citing *Adamson*, 514 F.3d at 1145).

[35] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[36] *Bennett*, 792 F.3d at 1266.

[37] *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

[38] *Bennett*, 792 F.3d at 1266 (citing *Adamson*, 514 F.3d at 1145).

[39] *Id*.

the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."[40]  Again, "[d]espite the shifting framework, the ultimate burden of persuasion remains with the plaintiff."[41]

   A.   **Prima Facie Case**

In order to establish a prima facie case of discrimination in the context of a RIF, Plaintiff must show that: (1) he is within the protected age group; (2) he was doing satisfactory work; (3) he was discharged despite the adequacy of his work; and (4) there is some evidence the employer intended to discriminate against him in reaching its RIF decision.[42]  "The fourth element may be established through circumstantial evidence that the plaintiff was treated less favorably than younger . . . employees during the RIF.  Thus, '[e]vidence that an employer fired qualified older . . . employees but retained younger . . . ones in similar positions is sufficient to create a rebuttable presumption of discriminatory intent.'"[43]  "The Tenth Circuit has ruled that a two year age difference is 'obviously insignificant' for purposes of the fourth element of the prima facie case."[44]

Defendant asserts that Plaintiff cannot offer evidence of the fourth element.  Plaintiff asserts that he has established an inference because (1) two younger employees were retained

---

[40] *Id*. at 1266–67 (quoting *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 148 (2000)).

[41] *Lewis v. Twenty-First Century Bean Processing*, No. 2:15-CV-02322-JAR-TJJ, 2015 WL 4774052, at *2 (D. Kan. Aug. 13, 2015), *aff'd*, 638 F. App'x 701 (10th Cir. 2016) (citing *Richardson v. Blue Cross/Blue Shield of Kan., Inc*., 196 F. Supp. 2d 1174, 1181 (D. Kan. 2002)).

[42] *Brainard v. City of Topeka*, 597 F. App'x 974, 978 (10th Cir. 2015) (quoting *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1165 (10th Cir. 1998)).

[43] *Id*. (citing *Beaird*, 145 F.3d at 1165, 1167 and *Branson v. Price River Coal Co.*, 853 F.2d 768, 771 (10th Cir. 1988)).

[44] *Tolle v. Am. Drug Stores, Inc.*, No. CIV.A. 05-2191-KHV, 2006 WL 3256835, at *15 (D. Kan. Oct. 11, 2006) (citing *Munoz v. St. Mary–Corwin Hosp.,* 221 F.3d 1160, 1166 (10th Cir. 2000)).

and (2) he has presented evidence that his manager changed his evaluation to reflect a lower overall score.

As an initial matter, the Court finds that there is only one significantly younger employee who was retained. The two employees retained through the RIF were Courson (age 50) and Garcia (age 58). Courts in this district have held that an employee who is only three to four years younger than a plaintiff is not "substantially younger" such that there may be a proper inference of discrimination.[45] Plaintiff was 61 when he was terminated, and Garcia was 58. Accordingly, Garcia was not substantially younger, and the Court makes no inference of discrimination. Only Courson, who was 50, creates a rebuttable presumption under the fourth element of the prima facie case.

Nevertheless, the Court assumes, arguendo, that Plaintiff has established a prima facie case. The Court finds, however, that Plaintiff has not demonstrated a genuine issue of material fact with regard to pretext.

### B. Legitimate, Non-Discriminatory Reason

Under *McDonnell Douglas*, the burden shifts to Defendant to establish a legitimate, non-discriminatory reason for the termination. Defendant asserts that Plaintiff's termination was the result of a planned, company-wide RIF. A RIF instituted as a financial, cost-cutting measure constitutes a legitimate, non-discriminatory reason for terminating an employee.[46] Further, Defendant asserts that it had legitimate reasons for terminating Plaintiff instead of Courson or Garcia: both Courson and Garcia had superior experience and qualifications in the railcar

---

[45] *Id.* (collecting cases).

[46] *Jones v. Unisys Corp.*, 54 F.3d 624, 631 (10th Cir. 1995).

industry and possessed specific knowledge of tank cars, which Plaintiff lacked. The Court finds that Defendant has asserted a legitimate, non-discriminatory reason for terminating Plaintiff.

**C.   Pretext**

When an employer advances a legitimate non-discriminatory reasons for a plaintiff's termination, the burden shifts back to the plaintiff to establish pretext.[47] Pretext may be shown by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence."[48] A plaintiff typically makes a showing of pretext in three ways: (1) evidence that defendants' stated reason for the adverse employment action was false, *i.e.* unworthy of belief; (2) evidence that defendant acted contrary to a written company policy prescribing the action to be taken under the circumstances; or (3) evidence that defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting plaintiff."[49] The Court examines "the facts as they appear to the person making the decision to terminate plaintiff."[50]

The Tenth Circuit has elaborated on how a plaintiff may demonstrate pretext in the RIF context:

> In a RIF case, a plaintiff can demonstrate pretext in three principal ways. First she can argue that her own termination does not accord with the RIF criteria supposedly employed. . . . Second, a plaintiff can adduce evidence that her evaluation under the defendant's RIF criteria was deliberately falsified or manipulated so as to [a]ffect her termination or otherwise adversely alter her employment

---

[47] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[48] *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1203 (10th Cir. 2006).

[49] *Fugett v. Sec. Transp. Servs., Inc.*, 147 F. Supp. 3d 1216, 1237 (D. Kan. 2015) (citing *Kendrick v. Penske Transp. Servs, Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000)).

[50] *Fisher v. Sw. Bell Tel. Co.*, 361 F. App'x 974, 979 (10th Cir. 2010) (quoting *Kendrick*, 220 F.3d at 1231).

status. . . . Third, a plaintiff can adduce evidence that the RIF is more generally pretextual.[51]

Plaintiff asserts that he has demonstrated pretext because (1) he was more qualified and experienced than the two individuals who were retained and (2) his 2015-2016 performance evaluation was subjectively altered without legitimate justification or explanation. The Court addresses Plaintiff arguments in turn.

### 1. Experience of Regional Quality Managers

As an initial matter, it is uncontroverted that prior to the RIF, Defendant employed four Regional Quality Managers—Plaintiff (age 61), Courson (age 50), Porter (age 39), and Garcia (age 58). Two Regional Quality Mangers were terminated pursuant to the RIF, Plaintiff and Porter, who was the youngest of the managers. Accordingly, the Court considers Plaintiff's relevant experience compared to Courson and Garcia.

The Tenth Circuit is "willing to infer pretext when the facts assure us that the plaintiff is better qualified than the other candidates for the position."[52] It is uncontroverted that prior to working for GBW, Plaintiff had never worked for a railroad company. Before teaching at Metropolitan, Plaintiff had little training or experience specific to the railcar industry, with the exception of his work at Darby. Plaintiff testified that his only experience in tank cars before GBW was "just what little experience I had from college and teaching."[53] Rather, Plaintiff was a very experienced and qualified welder and an expert in the standards promulgated by the American Welding Society.

---

[51] *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1168 (10th Cir. 1998).

[52] *Jones v. Barnhart*, 349 F.3d 1260, 1267 (10th Cir. 2003) (citing *Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1457–58 (10th Cir.1994)).

[53] Doc. 35-1 at 124:7–13.

It is also uncontroverted that both Courson and Garcia had significant experience in the fields of railcars and tank cars. Courson had more than two decades of experience specific to the field of railcar repair, and—as admitted by Plaintiff—considerably more railcar and tank car experience than Plaintiff.[54] Courson developed a tank car training course for Defendant, which Plaintiff himself took. Garcia also had extensive experience in the field of railcar repair and specialized knowledge of the maintenance and repair of tank cars. Garcia has been employed in the railcar industry since 1979, with the exception of 1986 to 1990. He worked for various railroad companies as a welder, repairman, railcar inspector, material/safety supervisor, finish supervisor, repair supervisor, quality assurance manager, production manager, and safety/quality coordinator.

Plaintiff argues that his "qualifications were superior to Courson and Garcia and [he] had more relevant experience."[55] Plaintiff points to his welding and welding quality assurance expertise, arguing that the welding experience is critical to both the repair and maintenance of both railcars and tank cars.[56] The Court finds, however, that the facts do not assure that "[P]laintiff is better qualified than the other candidates for the position."[57] Viewing all facts in the light most favorable to Plaintiff, the Court infers that he was indeed a superior welder and possessed relevant experience and expertise for the job which he held. Nevertheless, when a termination is pursuant to a RIF, the question is not whether Plaintiff was qualified for his position; rather, the question is whether Plaintiff has demonstrated a genuine issue of material fact that he was *better qualified* to be a Regional Quality Manager at a company specializing in

---

[54] Docs. 43-2 ¶13, 35-1 at 100:21–101:2.

[55] Doc. 43 at 16.

[56] *See* Doc. 43-1 ¶¶13–16.

[57] *Jones*, 349 F.3d at 1267 (citing *Rea*, 29 F.3d at 1457–58.

repairing railcars than either Courson or Garcia. Based on the uncontroverted experience detailed above, the Court finds that he has not. Moreover, contrary to Plaintiff's argument, the Court finds that railcar and tank car experience is not "subjective criteria" warranting closer scrutiny.[58] The managers' experience is objective criteria. The Court does not "act as a super personnel department that second guesses employers' business judgments."[59] Accordingly, the Court finds that Plaintiff's relevant experience compared to similarly situated individuals does not support an inference of pretext.

### 2. Altered Evaluation

Next, Plaintiff points to Keneipp's duplicative evaluation as evidence that Keneipp was manufacturing reasons to terminate Plaintiff through the RIF. In support, he points to evidence that (1) employees were aware of the looming RIF and Defendant's financial difficulties; (2) Keneipp never directly supervised Plaintiff's work during the evaluation period; (3) Keneipp was unable to identify the specific criteria he used when completing Plaintiff's evaluation and it was therefore subjective; (4) at the same time that Keneipp lowered Plaintiff's evaluation scores, he increased Courson's; and (5) Defendant has not presented a written company policy which required supervisors to send their evaluations to management for review prior to sharing them with the employees. While the Court finds that there are genuine factual disputes as to many of the above issues, the Court finds none of them material.[60]

---

[58] *Berry v. Gen. Motors Corp.*, 796 F. Supp. 1409, 1422 (D. Kan. 1992) (finding factors such as general performance, people skills, and initiative subjective and therefore warranting a "benefit of an inference of discrimination").

[59] *Santana v. City & Cty. of Denver*, 488 F.3d 860, 865 (10th Cir. 2007) (quoting *Simms v. Okla. ex rel Dep't of Mental Health & Substance Abuse Servs.,* 165 F.3d 1321, 1329 (10th Cir. 1999)).

[60] For example, viewing all facts in the light most favorable to Plaintiff, the Court finds there is a genuine issue of fact as to whether employees knew that a RIF was imminent, whether Keneipp had adequate supervisory knowledge to complete Plaintiff's evaluation, and whether there was any company policy requiring upper management to review evaluations before they were shared with employees.

As an initial matter, Defendant does not assert that the evaluations were the basis of its RIF decision. Rather, Defendant asserts that relevant work experience in the railcar industry, including experience with tank cars, was the criteria used in its RIF decision. As discussed above, the Court finds that Plaintiff has not demonstrated a genuine issue of material fact that he was more experienced in Defendant's specific industry than either Courson or Garcia. Plaintiff has not put forth evidence that the altered evaluation related in any way to the employees' railcar and tank car experience, nor has he put forth any evidence that the evaluations were the true criteria used during the RIF. Accordingly, Plaintiff has not demonstrated a genuine issue of material fact that Defendant's legitimate reason "does not accord with the *RIF criteria supposedly employed*,"—here, relevant work experience—nor has he demonstrated that the "evaluation *under the defendant's RIF criteria* was deliberately falsified or manipulated."[61] Further, Plaintiff has not "adduce[d] evidence that the RIF is more generally pretextual."[62] Indeed, more than twenty-five individuals of all ages were terminated pursuant to the RIF.

Furthermore, even if the evaluations were the criteria used in Defendant's decision, the Court finds that the alternation was immaterial: prior to Keneipp's alteration of both Plaintiff's and Courson's evaluations, Burgett also rated Courson as a stronger employee than Plaintiff.[63] Defendant asserts that the "Quality Group [was] first required to eliminate two positions in February 2017, and in a second round, which occurred in March 2017, the Quality Group eliminated a number of additional managers."[64] Although Plaintiff asserts this is controverted

---

[61] *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1168 (10th Cir. 1998) (emphasis added).

[62] *Id.*

[63] *Compare* Doc. 38-1 at 8–9 *with* Doc. 38-1 at 11–12 (sealed). As discussed above, only Courson is a relevant comparator to Plaintiff because Garcia was not significantly younger. Moreover, Garcia's evaluations are not in the record before the Court.

[64] Doc. 38-2 ¶16 (sealed).

because management could eliminate whatever positions it wanted, he points to no evidence whatsoever in the record to support this argument.⁶⁵  A nonmovant "cannot create a genuine issue of material fact with unsupported, conclusory allegations."⁶⁶  As discussed above, there were four Regional Quality Manager positions, and two were eliminated during the course of the RIF.  Thus, to the extent Plaintiff argues that "if his performance evaluation by Jennifer Burgett had not been changed he would have been retained,"⁶⁷ the Court finds this statement to be without support.  Under either Burgett's or Keneipp's evaluation, Plaintiff's scores were lower than Courson's, and thus, there is no proper inference of pretext.⁶⁸

Finally, to the extent Plaintiff relies on comments—but no specific instances—where Keneipp referred to Plaintiff as "older than dirt," stray remarks unrelated to the challenged action are insufficient to create a jury issue.⁶⁹  The Court finds that Plaintiff has not demonstrated a genuine issue of material fact with regard to pretext.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion for Summary Judgment  (Doc. 34) is **granted**.

**IT IS SO ORDERED.**

Dated: August 1, 2019

S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE

---

⁶⁵ *See* Doc. 43 at 14.

⁶⁶ *Tapia v. City of Albuquerque*, 170 F. App'x 529, 533 (10th Cir. 2006) (citing *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1237 (10th Cir. 2004)).

⁶⁷ Doc. 43 at 19.

⁶⁸ Plaintiff does not point the Court to any other Quality Group members who might have been eliminated in place of Plaintiff.

⁶⁹ *See e.g.*, *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1140 (10th Cir. 2000).